**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**JAY BOYDSTON**,

      Plaintiff,

vs.	No. CIV 05-117 MCA/WDS

**WILEY ISOM,** an Officer of the New Mexico
State Police, and **DAVE STEWART**, a
Sergeant of the New Mexico State Police**,**

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendants' Motion for Summary Judgment* [Doc. 19], filed January 30, 2006.  Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants Defendants' motion.

## I. BACKGROUND

On February 3, 2005, Plaintiff Jay Boydston filed this civil action against Wiley Isom and Dave Stewart, both officers of the New Mexico State Police.  The *Complaint for Civil Rights Violations* alleges that Defendants maliciously prosecuted Boydston without probable cause for crimes they knew he did not commit, in violation of his rights under the Fourth and Fourteenth Amendments of the United States Constitution.  [Doc. 1 at 4].  On January 30, 2006, Defendants moved for summary judgment on all of Boydston's claims on the ground that they are entitled to both qualified and absolute immunity.  [See generally Doc. 19].  The

undisputed facts and evidence of record relating to Defendants' summary-judgment motion can be summarized as follows:

Jay Boydston is the owner of Route 66 Auto Sales ("Route 66") in Moriarty, New Mexico. On February 10, 2004, Defendants went to Route 66 to speak to Boydston about Route 66's allegedly having issued a temporary tag to purchaser Carol Dungca without first receiving the consent of the Motor Vehicle Department ("MVD"). At the time of their visit to Route 66, Officer Isom was a senior VIN inspector with the New Mexico State Police and Stewart was his sergeant. Defendants have both since retired.

When Defendants arrived at Route 66, they informed Boydston and his daughter, also his employee, that Route 66 could not issue more than one temporary tag for a vehicle without the consent of the MVD. Defendants then asked to inspect records relating to the sale of Ms. Dungca's vehicle. Boydston, who had recently received customer privacy-right information from the MVD ("the privacy policy"), declined the officers' request based upon his belief that to release the records would violate Ms. Dungca's right to privacy. Boydston then asked Defendants to leave, which they did not do. Instead, the parties' conversation devolved to the point where Boydston, who is epileptic, experienced a *grand mal* seizure. Defendants called an ambulance, which transported Boydston to a hospital. Boydston was not arrested at that time.

On March 10, 2004, Officer Isom, with Sergeant Stewart's consent, filed a criminal complaint against Boydston in the Magistrate Court for Torrance County. In the complaint, Officer Isom charged Boydston with (1) refusing to allow Defendants to inspect vehicle

records, in violation of § 66-4-5(D) NMSA 1978; and (2) knowingly obstructing, resisting, or opposing law enforcement officers attempting to serve or execute a rule or order, in violation of § 30-22-1(A) NMSA 1978.  Officer Isom also filed a *statement of probable cause* in which he detailed the events that transpired between Defendants and Boydston on February 10, 2004.  In connection with the criminal proceedings, Boydston was compelled to pay an appearance bond and was made subject to conditions of release.

On May 26, 2004, Boydston filed a motion to dismiss the complaint on the ground that, after three separate requests, Defendants still had not produced tapes and videos from the February 10, 2004 encounter that Boydston believed would prove his innocence.  The record evidence discloses that the presiding state magistrate judge had previously ordered that the tapes and videos be produced to Boydston.  The complaint was dismissed without prejudice on July 8, 2004.  Beneath the Judge's signature it was noted, "Officer failed to appear for court."

On February 3, 2005, Boydston filed his *Complaint for Civil Rights Violations* in this Court.  In brief, Boydston alleges that, by their actions both during and after their February 10, 2004 visit to Route 66,

> Defendants acted in concert to threaten and intimidate Plaintiff, then to seize him by summoning him to the jurisdiction of the Magistrate Court where he was required to submit to that jurisdiction, and to maliciously prosecute him without probable cause for crimes they knew he did not commit.  In doing so, they violated his rights under the Fourth and Fourteenth Amendments of the United States Constitution.

[Doc. 1 at 4].  Defendants now move for summary judgment on the ground that they are

entitled to both qualified and absolute immunity.

## II. ANALYSIS

### A. Standard of Review

#### 1. Summary Judgment

Summary judgment under Fed.R.Civ.P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed.R.Civ.P. 56(e). Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Id. Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial). See Celotex, 477 U.S. at 324. It is not the Court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the

4

moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

### 2. Qualified Immunity

When an individual defendant raises the affirmative defense of qualified immunity in a summary-judgment motion, the burden shifts to the plaintiff to establish, first, that the defendant violated a constitutional right. Cortez v. McCauley, 438 F.3d 980, 988 (10th Cir. 2006) (*citing* Reynolds v. Powell, 370 F.3d 1028, 1030 (10th Cir.2004)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier v. Katz, 533 U.S. 194, 201 (2001). If, however, a violation has been shown, the next step in the qualified- immunity sequence is to ask whether the constitutional right was clearly established when the alleged conduct occurred. See Cortez, 438 F.3d at 988.

"The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." Saucier, 533 U.S. at 202. For the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must be as the plaintiff maintains. Farmer v. Perrill, 288 F.3d 1254, 1259 (10th Cir. 2002). Summary judgment based on qualified immunity is appropriate if the law did not put the officer on notice that his conduct was clearly unlawful. Saucier, 533 U.S. at 202. If, however, the plaintiff successfully establishes both a violation of a

5

constitutional right and that the right was clearly established at the time of the alleged conduct, the burden shifts to the defendant, who must prove that there are no genuine issues of material fact and that the defendant is entitled to judgment as a matter of law. Cortez, 438 F.3d at 988 (*citing* Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312 (10th Cir.2002)). "In the end, therefore, the defendant still bears the normal summary judgment burden of showing that no material facts remain in dispute that would defeat the qualified immunity defense." Olsen, 312 F.3d at 1312.

### B. 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides, in relevant part, that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 is not an independent source of substantive rights; rather it is a mechanism for enforcing federal rights conferred elsewhere. See Albright v. Oliver, 510 U.S. 266, 271 (1994). Accordingly, an analysis of a plaintiff's federal civil-rights claim necessarily begins by identifying the specific constitutional right or rights allegedly infringed. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

In this case, Boydston asserts violations of the Fourth and Fourteenth Amendments. He appears to allege that, after he declined to provide Defendants with the records they

6

requested to review during their February 10, 2004 visit to Route 66, Defendants engaged in a malicious prosecution against him by filing in the Magistrate Court for Torrance County a *statement of probable cause* and a criminal complaint that were based on misstatements, omissions, and falsifications. The complaint was pursued, but ultimately dismissed. This malicious prosecution, contends Boydston, amounted to a violation of his Fourth and Fourteenth[1] Amendment rights, the Fourth Amendment violation being Defendants' "seiz[ing Boydston] by summoning him to the jurisdiction of the Magistrate Court where he was required to submit to that jurisdiction . . . ." [Doc. 1 at 4].

### C. Malicious Prosecution as the Basis of a § 1983 Action

"When a Section 1983 action is based on a claim of malicious prosecution, determining whether a plaintiff's federal rights have been violated begins with an analysis of the common law elements of malicious prosecution." Chacon v. Watson, No. 03-438 JC/ACT, 2004 U.S. Dist. LEXIS 28252, at *15-*16 (D.N.M. May 6, 2004). Courts in the

---

[1] Boydston does not identify the precise Fourteenth Amendment right Defendants allegedly infringed. Because Boydston alleges that Defendants "maliciously prosecute[d] him without probable cause . . . [and i]n doing so . . . violated his rights under the . . . Fourteenth Amendment[,]" the Court construes this claim as one for deprivation of substantive due process under the Fourteenth Amendment. See Albright, 510 U.S. at 269 (where petitioner alleged that respondent had deprived him of substantive due process under the Fourteenth Amendment—his "liberty interest"—to be free from criminal prosecution except upon probable cause). However, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Id. at 273 (internal quotations omitted). Accordingly, this Court will analyze Boydston's § 1983 claim under a Fourth Amendment framework only. See id. at 271 (holding that it was the Fourth Amendment, and not substantive due process, under which petitioner's claim was required to have been judged).

Tenth Circuit take the common-law elements of malicious prosecution as the "starting point" for the analysis of a § 1983 malicious-prosecution claim, "but always reach[] the ultimate question, which [they] must, of whether the plaintiff has proven a constitutional violation." Taylor v. Meacham, 82 F.3d 1556, 1561 (10th Cir. 1996). That constitutional right, in the malicious-prosecution context, is the right to be free from unreasonable seizures. Id.

In Pierce v. Gilchrist, the Tenth Circuit expanded on the notion of the common law as the "starting point" for a constitutional tort based on malicious prosecution. Pierce v. Gilchrist, 359 F.3d 1279 (10th Cir. 2004). In response to the question of how the petitioner's constitutional claims and the common law fit together in the case before it, the Pierce court made two significant pronouncements. First, it explained that the term "common law," when used in a constitutional tort analysis, "refers not to the specific terms of the tort law of any particular state, but to general principles of common law among the several states." Id. at 1288. To be sure, Pierce concluded that "federal courts fashioning constitutional analogues to traditional common law torts should refer to the general common law tradition, rather than to the law as defined by the jurisdiction where the action originated." Pierce, 359 F.3d at 1289.

Second, Pierce explained that the common law as "starting point" is just that—a point from which to begin the appropriate analysis—and thus rejected the view that a plaintiff does not state a claim actionable under § 1983 unless he satisfies the requirements of an analogous common law tort. Pierce, 359 F.3d at 1290.     Still, absent proof of the essential elements of the traditional common law tort, the §1983 plaintiff's malicious-prosecution claim fails

8

as a matter of federal law. Zamora v. City of Belen, 383 F.Supp.2d 1315, 1331 (D.N.M. 2005); see also Chacon, 2004 U.S. Dist. LEXIS 28252, at *19-*20 (holding that plaintiff's failure to show absence of probable cause for his arrest, an element "central to the tort" of malicious prosecution, dictated the answer to the ultimate question in his § 1983 action, which was whether his state-court prosecution constituted a violation of his Fourth Amendment rights). The Court now turns to the tort of malicious prosecution as the "starting point" in its analysis of Boydston's constitutional claim.

### 1. The Elements of a Common Law Malicious-Prosecution Claim

#### a. Initiation of Criminal Proceedings

The first element of the common-law tort of malicious prosecution is the initiation or procurement of criminal proceedings. See Gilchrist, 359 F.3d at 1291; see also RESTATEMENT (SECOND) OF TORTS §653 (1965). In this case, it is undisputed that Officer Isom, with Sergeant Stewart's consent, filed the criminal complaint against Boydston. [Doc. 19 at 6]. Accordingly, the Court concludes that Boydston has satisfied the first element of a common law malicious-prosecution claim.

#### b. Termination in Favor of the Accused

The second element of a common law malicious-prosecution claim is the termination of the original action in favor of the § 1983 plaintiff. Gilchrist, 359 F.3d at 1294; see also RESTATEMENT (SECOND) OF TORTS §653 (1965). "New Mexico law allow[s] recovery for malicious prosecution [o]nly if the criminal prosecution against the plaintiff is disposed of in a way which indicates his innocence." Mendoza v. K-Mart, Inc., 587 F.2d 1052, 1057

(10th Cir. 1978); see also RESTATEMENT (SECOND) OF TORTS §660 cmt. a (1965) ("Proceedings are 'terminated in favor of the accused,' as that phrase is used in § 653 . . . only when their final disposition is such as to indicate the innocence of the accused.").

In support of his argument that the Magistrate Court proceedings terminated in his favor, Boydston has directed the Court to a *Memorandum Opinion and Order* issued by United States District Judge Judith Herrera in Kee v. Smith, No. CIV 02-1243, wherein Judge Herrera concluded that, for purposes of a malicious-prosecution claim brought pursuant to § 1983, dismissal for failure to comply with speedy trial requirements indicates an accused's innocence and constitutes a favorable termination. [Doc. 136 in No. CIV 02-1243]. In so deciding, Judge Herrera considered two Second Circuit cases, Murphy v. Lynn, 118 F.3d 938 (2nd Cir. 1997) and Posr v. Court Officer Shield, 180 F.3d 409 (2nd Cir. 1999). This Court also has considered Murphy and Posr and, for the reasons that follow, concludes that they do not support Boydston's position.

In Murphy, the plaintiff brought a malicious-prosecution § 1983 action against various defendants after earlier criminal proceedings against him were dismissed for speedy trial violations. Murphy, 118 F.3d at 943, 949. In determining that a dismissal for failure to prosecute or to comply with speedy trial requirements constitutes termination in favor of the accused, the Murphy court reasoned that "to view a dismissal for failure to prosecute within the time allowed as a termination not favorable to the accused would have the effect of unfairly compel[ling] one charged with a criminal offense to waive his constitutional or statutory right to a speedy trial in order to preserve his right to civil retribution for a

10

demonstrated wrong." Murphy, 118 F.3d at 949-950 (internal quotation omitted). Indeed, part of the rationale for viewing a dismissal for failure to prosecute in a timely fashion as favorable to the accused, explained Murphy, is that "failure to proceed to the merits compels an inference of such an unwillingness or inability to do so as to imply a lack of reasonable grounds for the prosecution." Id. at 949 (internal quotation omitted).

Posr similarly involved a § 1983 malicious-prosecution claim brought after earlier criminal proceedings against the § 1983 plaintiff were dismissed for failure to comply with speedy trial requirements. In that case, the Second Circuit reiterated that such a claim is not precluded where earlier criminal proceedings were dismissed for speedy trial violations, since the "'accused should not be required to relinquish [his speedy trial] privilege in order to vindicate his right to be free from malicious prosecution.'" Posr, 180 F.3d at 418 (*quoting* Murphy, 118 F.3d at 949)).

This Court concludes that the facts of Boydston's situation are distinguishable from those present in Murphy and Posr. First, unlike the criminal charges in the Second Circuit cases, the criminal complaint in Boydston's case was not dismissed for abandonment of prosecution or for speedy trial violations. Instead, the reason for the dismissal of the criminal complaint against Boydston was noted as "Officer failed to appear for court." [Doc. 19; Exh. 7]. Also, unlike the charges in Murphy, the charges against Boydston were dismissed *without* prejudice. [Id.; compare Murphy, 118 F.3d at 943 (noting that dismissal was with prejudice); and Posr, 180 F.3d at 418 (explaining that where criminal charges are dismissed without prejudice, the possibility remains open that the government will pursue

the same charges against the same defendant later on, which is why such a termination carries no implications about the legitimacy of the prosecution)].

Finally, the Murphy court's reasoning that the failure to proceed to the merits of a case "compels an inference of such an unwillingness or inability to do so as to imply a lack of reasonable grounds for the prosecution[,]"does not apply here. See Murphy, 118 F.3d at 949. That is because the record evidence in this case does not indicate an unwillingness to prosecute. Rather, Officer Isom testified that, pursuant to what he called "the normal procedure" for retiring state police officers such as himself, he made a specific request that the presiding judge dismiss the action against Boydston. He also testified that he believed that the case against Boydston had, in fact, been dismissed. [Doc. 19; Exh. 2 at 64-66, 73]. Sergeant Stewart testified that he never received a notice of trial in Boydston's criminal case and was not aware that a trial date had been set. [Doc. 19; Exh. 3 at 22]. Thus, the evidence in this case does not support the conclusion that the criminal charges against Boydston were not pursued because of an unwillingness or inability to do so, or that the charges were dismissed for violations of Boydston's speedy trial rights. Accordingly, the Court concludes that neither Judge Herrera's *Memorandum Opinion and Order* in Kee v. Smith, nor the reasoning of the Second Circuit in Murphy and Posr lends support to Boydston's position that the dismissal of the criminal complaint against him constitutes a termination in his favor. Although Boydston's failure on an element "central to the tort" of malicious prosecution would seem to "dictate[] the answer to the ultimate question" for this Court, see Chacon, 2004 U.S. Dist. LEXIS 28252, at *19, for purposes of completeness the Court next

12

addresses whether Boydston has satisfied the third element of the common law tort of malicious prosecution.

### c. Absence of Probable Cause

The third element of a common law malicious-prosecution claim is the absence of probable cause to support the original arrest, continued confinement, or, in this case, prosecution of the plaintiff.  See Gilchrist, 359 F.3d at 1294; see also RESTATEMENT (SECOND) OF TORTS §653 (1965).  Analysis of the presence or absence of probable cause begins with a review of the two statutory sections that Boydston was accused of violating, §§ 30-22-1(A) and 66-4-5(D) NMSA 1978.  The Court considers these sections in reverse order.

Section 66-4-5 of the New Mexico Statutes is entitled "Records of Purchases, of Sales, and of Vehicles Dismantled" and provides, in pertinent part, that "[a] title service company licensee shall maintain a record of[] (1) every temporary registration plate issued . . . ."  § 66-4-5(D) NMSA 1978.  Subsection (E) instructs that

> [e]very record required to be maintained pursuant to the provisions of this section shall be retained for a period of three years from the end of the year in which the record was created and *shall be open to inspection by any peace officer or officer of the department during reasonable business hours*. If the licensee fails to maintain the records required or to permit their inspection during reasonable business hours, the license becomes invalid.

§ 66-4-5(E) NMSA 1978 (emphasis added).  Violation of § 66-4-5 constitutes a misdemeanor.  See § 66-4-9(A) NMSA 1978 (providing that any person who violates any

provision of, among others, § 66-4-1 through § 66-4-9 NMSA 1978 is guilty of a misdemeanor and shall be punished by a fine of $300.00 or by imprisonment of not less than 30 days, or both).

Section 30-22-1 is entitled "Resisting, Evading or Obstructing an Officer" and provides, in pertinent part, that

> [r]esisting, evading or obstructing an officer consists of[] knowingly obstructing, resisting or opposing any officer of this state or any other duly authorized person serving or attempting to serve or execute any process or *any rule* or order of any of the courts of this state or any other judicial writ or process. . . .

§ 30-22-1(A) NMSA 1978 (emphasis added).  Violation of § 30-22-1 also is a misdemeanor. Boydston asserts that Defendants lacked probable cause to prosecute him for the alleged violations of these statutory sections. [Doc. 20 at 11].  He contends that probable cause was absent because (1) in light of the privacy policy, he raised a legitimate question to Defendants as to whether he was required to produce the requested records, and (2) once he ordered Defendants off the premises, Defendants should not have been present without a warrant. [Id.].

"Probable cause exists where the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a prudent man in believing that an offense has been or is being committed." Karr v. Smith, 774 F.2d 1029, 1031 (10th Cir. 1985).  Additionally, an officer may rely on specialized training and experience in assessing the existence of probable cause. See, e.g., United States v. Santos, 403 F.3d 1120, 1124 (10th Cir. 2005).

14

In this case, it is undisputed that Boydston refused Defendants' request to inspect records relevant to the sale of Carol Dungca's vehicle. While Boydston contends that he had a *reason* for refusing to turn over the records—his customer's right to privacy—he does not contest that he did not comply with Defendants' request. [See Doc. 19, "Statement of Uncontroverted Facts" at 2, ¶ 6 and Doc. 20 at 1 and 2, ¶ A]. Although Boydston's *grand mal* seizure and consequent transportation to the emergency room prevented any arrest Defendants might have effected at that time,[2] Officer Isom, with Sergeant Stewart's consent, later filed a criminal complaint alleging that Boydston "did refuse to allow law enforcement officers, (Officer Wiley Isom, Sgt. Dave Stewart), to inspect vehicle records at a licensed auto dealer, contrary to 66-4-5 subsection D[,]" and also "did knowingly obstruct, resist or oppose a law enforcement officer, (Officer Wiley Isom, Sgt. Dave Stewart), while attempting to serve or execute any rule or order, contrary to 30-22-1 subsection A." [Doc. 19; Exh. 4]. Officer Isom also filed a *statement of probable cause*, in which he stated that he "explained [to Boydston] that according to the law, he needed to provide that vehicle file to [Officer Isom] for review, and that failure to do so was a violation of the law." [Doc. 19; Exh. 5].

The Court concludes that, in light of the facts and circumstances within Officer Isom's knowledge, it was reasonable for him to believe that, in refusing a request for records relating to the sale of Carol Dungca's vehicle, Boydston was in violation of both §§ 66-4-5(D) and 30-22-1(A). At the time of the incident in question, Officer Isom was a senior VIN inspector

---

[2] Although Boydston apparently never was physically arrested, he was compelled to pay an appearance bond and made subject to conditions of release in connection with the criminal proceedings in the Magistrate Court for Torrance County. [Doc. 20; Exh. H].

for the State of New Mexico.  As such, Officer Isom had attended training courses through the Albuquerque Police Department ("APD") and other organizations.  As part of his training, Officer Isom had become familiar with the specific statutes in question and was advised that a violation of the statutes is a violation of the law.  Also in his training, Officer Isom was instructed that he did not need a warrant to inspect records pursuant to the provisions of § 66-4-5.  Officer Isom also testified that he had done "several" inspections with the APD task force on dealerships within Albuquerque.  [Doc. 19; Exh. 2 at 71-73].  That Boydston raised the privacy policy as his reason for refusing to turn over the requested records does not change the reasonableness of Defendants' request, since the privacy policy, under the bolded heading, "The Types of Information We May Disclose," expressly informs the customer that "[the dealership] may disclose all of the nonpublic personal information that [the dealership] collect[s] about you as a consumer, customer, or former customer to third parties *as permitted by law.*"  [Doc. 20; Exh. B (emphasis added)].  Based on the foregoing, the Court concludes that Defendants reasonably believed that probable cause existed to file a criminal complaint against Boydston for violations of §§ 66-4-5(D) and 30-22-1(A).

Boydston's failure to establish an absence of probable cause for the prosecution against him in the Magistrate Court for Torrance County is fatal to his § 1983 malicious-prosecution claim.  As was the case with the element of favorable termination, failure to show an absence of probable cause, an element "central to the tort" of malicious prosecution, dictates the answer to the ultimate question before this Court, which is whether Boydston's

prosecution in the Magistrate Court for Torrance County worked a violation of his Fourth Amendment rights.  See Gilchrist, 359 F.3d at 1289 ("Although the common law tort serves as an important guidepost for defining the constitutional cause of action, *the ultimate question is always whether the plaintiff has alleged a constitutional violation.*") (emphasis added).  Because the Court is constrained to answer that question in the negative, *Defendants' Motion for Summary Judgment* will be granted.

### III. CONCLUSION

In accordance with Gilchrist, this Court has looked to the common law tort of malicious prosecution as the "starting point" for Boydston's constitutional claim while recognizing its obligation to determine the ultimate question of whether Boydston has proven a constitutional violation.  Because the Court determines that Boydston has failed to establish two elements "central to the tort" of malicious prosecution, *i.e.*, that the criminal proceedings in the Magistrate Court for Torrance County terminated in his favor and that there was no probable cause for those criminal proceedings, the Court is unable to discern a constitutional violation.  See Saucier, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").  Since the Court concludes that Defendants are entitled to summary judgment for Boydston's inability to overcome their claim to qualified immunity, the Court declines to reach the issue of Defendants' entitlement to absolute immunity.

**IT IS, THEREFORE, ORDERED** that *Defendants' Motion for Summary Judgment* [Doc. 19] is **GRANTED**.

**SO ORDERED** this 20th day of April, 2006, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge